UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

DEDRA DE LA ROSA

                                Plaintiff,

           -against-

33 GREENE STREET CORP. AND ACNE CORP.

                             Defendants.
--------------------------------------------------------------x

**1:22 CV 5205**

**COMPLAINT**

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff Dedra De La Rosa (hereafter also referred to as "Plaintiff"), by counsel, Parker Hanski LLC, as and for the Complaint in this action against Defendants 33 Greene Street Corp. and Acne Corp. (together referred to as "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.  Plaintiff, Dedra De La Rosa, an individual with a mobility disability, requires a wheelchair for mobility.

2.  Plaintiff brings this action because Defendants deny her equal access to their place of public accommodation, the Acne Studios clothing store located at 33 Greene Street, New York, NY (hereinafter also referred to as the "Acne Studios" premises) due to her mobility disability.

3.  Defendants deny Plaintiff access to the Acne Studios premises as they maintain architectural barriers at the store that deny entry to persons that use wheelchairs for mobility.

4.   Defendants, however, do not maintain architectural barriers at the store which deny entry to members of the public that do not require wheelchairs for mobility.

5.   In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses to redress Defendants' unlawful disability discrimination against Plaintiff.

6.   Defendants unlawfully discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations, the New York Human Rights Law ("State HRL"), New York Executive Law ("N.Y. Exec. Law") Article 15, the New York Civil Rights Law, § 40 *et seq.* ("N.Y. CRL"), and the New York City Human Rights Law ("City HRL"), Administrative Code of the City of New York ("N.Y.C. Admin. Code") Title 8.

7.   As explained more fully below, Defendants own, lease, lease to, operate, and control a place of public accommodation through which they violate the laws that prohibit disability discrimination: the ADA, the State HRL, the N.Y. CRL and the City HRL (collectively, the "Human Rights Laws").

8.   Defendants violate the Human Rights Laws through their actions, and those of their agents and employees.

9.   Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

10. Defendants chose to ignore the explicit legal requirements that obligated them to make their place of public accommodation physically accessible and usable by persons with disabilities[1].

11. By ignoring their obligation to provide an accessible place of public accommodation, Defendants reveal their indifference to Plaintiff's (and other individuals with disabilities') right to equal opportunity to their publicly available place, the Acne Studios premises.

12. Aware that their decision to maintain architectural barriers and violate the disability access requirements would be indiscernible most persons, Defendants presumed they would never need to comply with the Human Rights Laws.

13. Plaintiff, however, acts to right Defendants' wrongs. Therefore, Plaintiff seeks to compel Defendants to make their place of public accommodation physically accessible to individuals with disabilities so that Plaintiff can enjoy the full and equal opportunity that Defendants provide to customers without disabilities.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as Plaintiff's claims involve federal questions regarding the deprivation of Plaintiff's rights under the ADA.

---

[1] As used in Plaintiff's Complaint the terms "accessible" and "readily accessible to and usable" mean that the place of public accommodation complies with the design and construction standards referenced in Plaintiff's Complaint and can be approached, entered, and used by people having physical disabilities.  *See* 42 U.S.C. § 12183, 28 C.F.R. § 36.406, and N.Y.C. Admin. Code § 27-232; and § 28-1102.1.

3

15. This Court also has supplemental jurisdiction over Plaintiff's State HRL, N.Y. CRL, and City HRL claims pursuant to 28 U.S.C. § 1367(a).

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' discriminatory acts alleged herein occurred in this district and Defendants' place of public accommodation is located in this district.

**PARTIES**

***Plaintiff***

17. At all times relevant to this action, Plaintiff Dedra De La Rosa has been and remains a resident of the State and City of New York.

18. Plaintiff suffers from medical conditions that inhibit her ability to walk and which restrict her body motion range and movement.

19. Due to her impairment, Plaintiff uses a wheelchair for mobility.

***Defendants***

20. Defendant 33 Greene Street Corp. is a Domestic Business Corporation that engages in business in New York.

21. As a Domestic Business Corporation, Defendant 33 Greene Street Corp. is not a governmental entity.

22. Defendant 33 Greene Street Corp. owns the building located at 33 Greene Street in New York County, New York (hereinafter referred to as "33 Greene Street").

23. Defendant Acne Corp. is a Delaware Foreign Business Corporation that engages in business in New York.

24. Defendant Acne Corp. is not a governmental entity.

4

25. At all relevant times, defendant Acne Corp. owned and operated Acne Studios located in 33 Greene Street.

26. Defendant Acne Corp. leases the Acne Studios premises from defendant 33 Greene Street Corp..

27. Upon information and belief, 33 Greene Street Corp. and Acne Corp. have a written lease agreement for the Acne Studios premises.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

28. The Acne Studios premises is operated by private entities as no defendant is a State or local government; a department, agency, special purpose district, or other instrumentality of a State or local government; or a commuter authority. 42 U.S.C. § 12131(1) and § 12181(6).

29. The operations of the Acne Studios premises affect commerce. 28 C.F.R. § 36.104.

30. As a clothing store, Acne Studios located at 33 Greene Street is a place of public accommodation pursuant to the Human Rights Laws. See 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; N.Y. Exec. Law § 292(9); and the N.Y.C. Admin. Code § 8-102.

31. Each of the Defendants is an entity required to comply with the Human Rights Laws as the Defendants own, lease, lease to, control or operate a place of public accommodation within the meaning of the Human Rights Laws. See *Id.*

32. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the Human Rights Laws. See 28 C.F.R. §

5

36.201(b); see also 42 U.S.C. 12182(a), N.Y. Exec. Law §2962(a), N.Y.C. Admin. Code § 8-107(4)(a).

33. N.Y.C. Admin. Code § 19-152 and § 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain the public sidewalk that abuts its real property.

34. As Defendant 33 Greene Street Corp. is required to maintain, repave, reconstruct, and repair the public sidewalk that abuts its property, Defendant 33 Greene Street Corp. has continuously controlled, managed, and operated the public sidewalk that abuts 33 Greene Street, including the portion of the sidewalk that constitutes the entrance the Acne Studios premises.

35. Numerous architectural elements at the Acne Studios premises prevent or restrict physical access to persons with disabilities ("architectural barriers"), including Plaintiff.

36. The architectural barriers at the Acne Studios premises include gateway barriers – such as a stepped entrance - that exclude Plaintiff and other persons with mobility disabilities from the Acne Studios premises.

37. Upon information and belief, the Acne Studios premises initially opened for business in 2012.

38. Upon information and belief, the square footage of the Acne Studios premises was approximately 3,000 square feet until late 2021.

39. Upon information and belief, in 2021 Defendants expanded the area of the Acne Studios premises from approximately 3,000 square feet to approximately 7,000 square feet of space.

6

40. Upon information and belief, the space in which the Acne Studios premises is located, the exterior entrance to the space, and the sidewalks adjoining the space were renovated, remodeled, and reconstructed at various times after January 26, 1992.

41. The work performed to the space in which the Acne Studio premises is now located were changes that affected or could have affected the usability of the space now occupied by Defendant Acne Corp.

42. Upon information and belief, to build out the Acne Studios store, Defendants renovated, remodeled, and reconstructed the space now occupied by Acne Studios in 2011 and 2012.

43. Upon information and belief, Defendants also renovated, remodeled, and reconstructed the Acne Studios premises in 2021.

44. Upon information and belief, the work performed to build out the Acne Studios premises included work to the store's entrance and the steps at the exterior entrance, demolition and construction of partitions and rearrangement of walls, installation of new concrete sidewalk and diamond plated steel covers.

45. Upon information and belief, the work performed to renovate, remodel, and reconstruct the Acne Studios premises in 2021 included work to the store's entrance and the steps at the exterior entrance, demolition and construction of partitions and rearrangement of walls.

46. The work Defendants performed to build out the Acne Studios premises were changes that affected, or which could have affected the usability of the space.

47. The work Defendants performed to the Acne Studios premises in 2021 were changes that affected, or which could have affected the usability of the space.

7

48. When Defendants expanded the square footage of the Acne Studios premises' they made a change that affected the usability of the space.

49. The Acne Studios premises is "altered" within the meaning of the ADA. See 28 C.F.R. 36.402(b)(1).

50. The renovated, remodeled, reconstructed spaces, areas, and elements of the Acne Studios premises, including its the exterior entrance constitute "altered areas" within the meaning of the ADA. See *Id*.

51. The renovated, remodeled, reconstructed spaces, areas and elements of the 33 Greene Street related to the Acne Studios premises constitute "altered areas" within the meaning of the ADA. See *Id*.

52. To create the Acne Studios premises in 2011/2012, and when the space was remodeled and renovated in 2021, Defendants utilized architectural drawings that detailed the work to be required to build the Acne Studios premises to Defendants' specifications. See N.Y.C. Admin Code § 28-104.7.1.

53. Upon information and belief, the architectural drawings detailed the Acne Studios premises' floor plan, layout, fixtures, flooring, entrances, and interior spaces, among other architectural elements. See *Id*.

54. Upon information and belief, the architectural drawings also detailed the legal requirements that Defendants were obligated to comply with in their design and construction of the Acne Studios premises. See *Id.*

55. Upon information and belief, the legal requirements detailed in the architectural drawings included the design and construction standards that mandate the

8

provision of physical access for persons with physical disabilities at the Acne Studios

premises. See *Id.*

56.  Upon information and belief, the design and construction standards referenced

in Defendants' architectural drawings included:

    i.the accessibility provisions of the 1968 New York City Building Code, N.Y.C.
Admin. Code § 27-292.1 *et seq*. (the "1968 BC"), inclusive of ANSI A117.1-1986
as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"[2], and
together with the 1968 BC, the "1968 NYC Standards");

    ii.the accessibility provisions of the 2008 New York City Building Code, N.Y.C.
Admin. Code § 28-1101 *et seq*. [3] and Appendix E (the "2008 BC"), inclusive of
ICC A117.1-2003 (the "2008 Ref Std") and together with the 2008 BC, the "2008
NYC Standards");

    iii.the accessibility provisions of the 2014 New York City Building Code, N.Y.C.
Admin. Code § 28-1101 *et seq*. and Appendix E (the "2014 BC"), inclusive of
and ICC A117.1-2009[4] (the "2014 Ref. Std., and together with the 2014 BC, the
"2014 NYC Standards");

    iv.the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36
Appendix A[5]; (hereinafter referred to as the "1991 ADA Standards"); and

    v.the 2010 Standards for Accessible Design codified in 36 CFR part 1191
Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (hereinafter
referred to as the "2010 ADA Standards", and together with the 1991 ADA
Standards, the "ADA Standards").

The 2014 NYC Standards, collectively with the 1968 NYC Standards and the 2008 NYC
Standards, are referred to herein as the "NYC Standards". The ADA Standards together
with the NYC Standards are collectively referred to herein as the "Accessibility
Standards".

---

[2]See N.Y.C. Admin Code §§ 27-292.2 and Reference Standard 4-6.
[3] As such provisions (N.Y.C. Admin. Code § 28-1101 and Appendix E) existed prior to
the effective date (December 31, 2014) of the 2014 BC.
[4] See N.Y.C. Admin Code § 28-1101.2 and Appendix E, § § E101 and E112.
[5] Republished in 28 CFR part 36 Appendix D on Sept. 15, 2010. 28 C.F.R. § 36.104, 75
Fed. Reg. 56236, 56237 (September 15, 2010).

57. Upon information and belief, Defendants' lease agreement for the Acne Studios premises provides that the space must comply with the Human Rights Laws and the Accessibility Standards.

58. Upon information and belief, Defendants did not comply with the Accessibility Standards, *i.e.*, the legal requirements related to physical access to persons with disabilities, when they performed construction work to the Faherty premises.

59. As Defendants had knowledge of, and specific notice regarding, their obligation to comply with the Accessibility Standards, Defendants knowingly and with deliberate indifference failed to comply with the Accessibility Standards when they performed design and construction work to 33 Greene Street and the Acne Studios premises.

60. Defendants continue their knowing refusal to comply with the Accessibility Standards, as Defendants are aware of their obligation to provide an accessible place of public accommodation.

61. As a result of Defendants' failure to comply with the Accessibility Standards, the services, features, elements, and spaces of the Acne Studios premises are not accessible to Plaintiff as required by the Human Rights Laws. See 42 U.S.C. § § 12182(a), § 12183(a), and § 12186(b); N.Y. Exec. Law 296(2)(a); and N.Y.C. Admin. Code §8-107(4).

62. Because Defendants failed to comply with the Accessibility Standards Plaintiff was, and remains, unable to enjoy safe and equal access to the areas of the Acne Studios premises that are open and available to the public.

10

63. Within the past three years of filing this action, Plaintiff has desired and attempted to access the Acne Studios premises.

64. Plaintiff desires to access the Acne Studios premises but remains deterred from doing so due to the architectural barriers extant at the premises.

65. Architectural barriers which Plaintiff encountered and those that deter her from patronizing the Acne Studios premises include, but are not limited to, the following:

I. No accessible route from the public sidewalk to the public entrance.
*Defendants fail to provide an accessible route within the site from public streets or sidewalks to the building entrance. See 1991 ADA Standards § 4.1.2(1), 2010 ADA Standards § 206.2.1, 1968 BC§ 27-292.5(b), 2008 BC § 1104.1, and 2014 BC § 1104.1.*

II. Steps at the exterior of the public entrance with changes in level greater than ½-inch high between the public sidewalk and the entrance.
*Defendants fail to provide that level changes greater than 1/2-inch high are ramped. See 1991 ADA Standards § 4.3.8, 2010 ADA Standards § 303.4, 1968 Ref Std § 4.3.8., 2008 Ref Std § 303.3, and 2014 Ref Std. § 303.4.*

III. Slopes at exterior of the public entrance that exceed 1:20 (5%) between the public sidewalk and the entrance.
*Defendants fail to provide that the running slope of walking surfaces shall not be steeper than 1:20 (5%). See 1991 ADA Standards § 4.3.7, 2010 ADA Standards § 403.3, 1968 Ref Std § 4.3.7, 2008 Ref Std § 403.3, and 2014 Ref Std § 403.3.*

IV. No accessible public entrance[6].
*Defendants fail to provide that at least 50% of all its public entrances are accessible. See 1991 ADA Standards § 4.1.3.8(a)(i).*
*Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 ADA Standards § 206.4.1.*
*Defendants fail to provide that ALL its public entrances are accessible. See 1968 BC § 27-292.5, 2008 BC § 1104.1, and 2014 BC § 1105.1.*

---

[6] There is a signage with the International Symbol of Accessibility at the public entrance with the following text: "Accessible Entrance at Greene Street Auxiliary Entrance". However, there is no public entrance to the Acne Studios premises on Greene Street. Upon information and belief, any entrances on Greene Street are service and freight entrances for 33 Greene Street.

V.   Doorways without level maneuvering clearances at the pull side of the door at the public entrance due to steps and sloping at the sidewalk.
*Defendants fail to provide an accessible door with level maneuvering clearances.* See *1991 ADA Standards § 4.13.6, 2010 ADA Standards § 404.2.4, 1968 Ref Std § 4.13.6, 2008 Ref Std § 404.2.3, and 2014 Ref Std § 404.2.3.*

VI.   Sales and service counters that are not accessible.
*Defendants fail to provide that at least one of each type of sales and/or service counter is accessible.* See *1991 ADA Standards § 7.2(1), 2010 ADA Standards § 227.3, 1968 BC § 27-292.10, 2008 BC § 1109.12.3, and 2014 BC § 1109.12.3.*

VII.   Sales and service counters are more than 36 inches above the finish floor.
*Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters.* See *1991 ADA Standards § 7.2(1), 2010 ADA Standards § 904.4, 1968 Ref Std § 4.30.4 and § 4.32.5.4, 2008 Ref Std § 904.3 and 2014 Ref Std § 904.3.*

VIII.   Interior routes (and pass-throughs) throughout the premises that provide less than 36 inches of clear width.
*Defendants fail to provide an accessible route of at least 36 inches.* See *1991 ADA Standards § 4.3.3, 2010 ADA Standards § 403.5.1, 1968 Ref Std § 4.3.3, 2008 Ref Std § § 403.5, and 2014 Ref Std § 403.5.*

IX.   No accessible public exit, as the exit, which is also the public entrances is not accessible as described above.
*Defendants fail to provide accessible means of egress in the number required by the code.* See *1991 ADA Standards § 4.1.3(9), 2010 ADA Standards § 207.1, 1968 BC § 27-292.1 and § 27-357(d), 2008 BC § 1007.1, and 2014 BC § 1007.1.*

66. Upon information and belief, a full inspection of the Acne Studios premises will reveal the existence of other barriers to access.

67. To properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Acne Studios premises so that she may catalogue other architectural barriers and have Defendants remediate the Acne Studios premises so that it is accessible to her.

68. Plaintiff therefore gives notice that, to the extent not contained in this Complaint, she intends to amend her Complaint to include any violations of the

Accessibility Standards or Human Rights Laws discovered during an inspection of the Acne Studios premises.

69. Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

70. Defendants continue to discriminate against Plaintiff and other mobility impaired customers by providing less and unequal access to its premises, services, offerings, and accommodations than what they provide to nondisabled customers.

71. Defendants continue to discriminate against Plaintiff and other mobility impaired customers by limiting and reducing the options available to such patrons as compared to the options available to nondisabled customers.

72. Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures comply with the Human Rights Laws.

73. Defendants have not provided accommodations or modifications so that Plaintiff and other persons with disabilities can have equal opportunity with respect to the Acne Studios premises.

74. Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the Human Rights Laws. This threat is particularly evidenced by the fact that the architectural barriers to access within the Acne Studios premises continue to exist and deter and deny Plaintiff access.

75. Plaintiff frequents the area where the Acne Studios premises is located.

76. Plaintiff intends to patronize the Acne Studios premises after it becomes fully accessible to Plaintiff.

## ALLEGATIONS RELATED TO TESTER STATUS

77. Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether the Acne Studios premises is accessible.

78. Plaintiff intends to patronize the Acne Studios premises as a "tester" to monitor, ensure, and determine whether the Acne Studios premises is accessible.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

79. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

80. Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.

81. As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility, and has restricted use of her arms and hands.

82. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. 36.201(b).

83. The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of public accommodation, the lessee of space in a building for a place of public accommodation, and the owner or operator of the place of public accommodation. 28 C.F.R. 36.201(b).

84. Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of the Acne Studios premises, a place of public accommodation is liable to Plaintiff.

85. None of these Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

86. Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

87. Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

88. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are neither desired nor welcome as patrons of their public accommodation.

89. Defendants performed design and construction work to build out the Acne Studios premises but failed to perform the work so that Acne Studios premises, a place of public accommodation, complies with the 1991 ADA Standards or the 2010 ADA Standards.

90. Because the Acne Studios premises does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to her mobility disability. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

91. Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff because of disability. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

15

92. Defendants fail to provide an integrated and equal setting for the disabled at the Acne Studios premises in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

93. In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Defendants failed to make the Acne Studios premises compliant with the ADA Standards (accessible) to the maximum extent feasible when they performed design and construction work that constituted alterations to the Acne Studios premises.

94. Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas in violation of 28 C.F.R. § 36.403.

95. Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.

96. It has been and remains readily achievable for Defendants to make their place of public accommodation fully accessible.

97. By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

98. In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal to the extent the removal of any of the barriers to access was not readily achievable. 28 C.F.R. § 36.305.

99. Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

16

100.     Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation that is not compliant with the ADA Standards, and therefore not accessible.

## SECOND CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

101.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

102.     Plaintiff suffers from medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.

103.     As a result of her impaired bodily functions, Plaintiff suffers from a disability within the meaning of the N.Y. Exec. Law § 292(21).

104.     The State HRL guarantees the right of all individuals to equal opportunity with respect to places of public accommodations, regardless of disability. N.Y. Exec. Law § 291 and § 290.

**Section § 296(2) Violations: Denial of Equality of Opportunity.**

105.     To protect the guaranteed right of persons with disabilities to equal opportunity, the State HRL provides that it is an unlawful discriminatory practice for owners, lessees, and operators of places of public accommodation "directly or indirectly to refuse, withhold from or deny any of the accommodations, advantages, facilities or privileges" of their place of public accommodation to a person because of disability. N.Y. Exec. Law § 296(2)(a).

17

106.     Defendants engage in an unlawful discriminatory practice in violation of the State HRL as they directly or indirectly deny Plaintiff "equal opportunity" to enjoy the offerings of their place of public accommodation. N.Y. Exec. Law 296(2)(a).

107.     Defendants engage in an unlawful discriminatory practice prohibited by the State HRL as they created and maintain a place of public accommodation which is not accessible to Plaintiff due to disability - the Acne Studios premises. N.Y. Exec. Law § 296(2)(a).

108.     Defendants continue to discriminate against Plaintiff in violation of the State HRL by maintaining and/or creating an inaccessible place of public accommodation. N.Y. Exec. Law § 296(2).

109.     Defendants have subjected Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation because Plaintiff is disabled.

110.     Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use the Acne Studios premises because Plaintiff is disabled.

**Section § 296(2)(c) Violations: Failure to Make Readily Achievable Accommodations and Modifications.**

111.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(iii).

112.     It remains readily achievable for Defendants to remove the barriers to access.

113.    Defendants cannot demonstrate that the removal of the barriers to access is not readily achievable. N.Y. Exec. Law § 296(2)(c)(iii) and (v).

114.    Alternatively, should Defendants demonstrate that the removal of any barriers to access is not readily achievable, Defendants discriminate in violation of the State HRL as they fail to provide persons with disabilities, including Plaintiff, equal opportunity to enjoy the privileges, advantages, and accommodations they offer at their place of public accommodation through alternative methods. N.Y. Exec. Law § 296(2)(c)(v).

115.    It would be readily achievable to make Defendants' place of public accommodation accessible through alternative methods.

116.    Defendants have failed to make reasonable modifications to their policies, practices, and procedures necessary to provide Plaintiff with access to their place of public accommodation, and the privileges, advantages, or accommodations they offer therein in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(i).

117.    Defendants cannot demonstrate that modifying their policies, practices and procedures would fundamentally alter the nature of their facility of the privileges, advantages, or accommodations they offer.

118.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal in violation of the State HRL. N.Y. Exec. Law § 296(2)(c)(v).

119.    It is and would have been readily achievable for Defendants to make their place of public accommodation fully accessible for persons with disabilities.

19

120.    It does not and would not have imposed an undue hardship or undue burden on Defendants to have made their place of public accommodation fully accessible for persons with disabilities.

**Section 296(6) Violations: Aid and Abet Discrimination.**

121.    Under the State HRL it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so". N.Y. Exec. Law § 296(6).

122.    Each of the Defendants have aided, abetted, incited, compelled, or coerced others to engage in unlawful discriminatory practices.

**Section 300: The State HRL's Liberal Construction Requirement.**

123.    In 2019, the New York State legislature amended the Executive Law to provide increased protections for classes protected by the State HRL. N.Y. Exec. Law § 300, as amended by Chapter 160 of the Laws of 2019, § 6.

124.    The 2019 amendment added language at the start of the State HRL's Construction section (N.Y. Exec. Law § 300) to explain that the law must be:

> construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.

*Id*.

125.    With the 2019 amendment, the State HRL is no longer coextensive with federal anti-discrimination law.

126.    Defendants' conduct is therefore subject to a significantly stricter standard under the State HRL than under Federal anti-discrimination laws, including the ADA.

127.    The State HRL's stricter standards include those situations where the ADA has provisions that are comparably worded to the State HRL's provisions. *Id*.

128.    Defendants must therefore provide an accessible place of public accommodation in instances where the ADA does not require Defendants to provide accessibility.

129.    As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

130.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

131.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

132.    Plaintiff suffers from medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

133.    Due to her impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

134.    The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity to places of public accommodations – in the words of the City HRL, the opportunity to have "full and equal enjoyment, on equal terms and

21

conditions" to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

135.    Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they as they created and maintain a place of public accommodation, the Acne Studios premises, which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

136.    Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of the Acne Studios premises due to her disability.

137.    Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

138.    Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); see also N.Y.C. Admin. Code § 19-152 and § 7-210.

139.    Defendants' failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

140.     Defendants discriminate against Plaintiff as they subject her to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

141.     Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of their place of public accommodation because of her disability.

142.     Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent" result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001); See N.Y.C Admin. Code § 8-107(17).

143.     Defendants' failure to comply with the NYC Building Code as well as their failure to expend monies to upgrade and alter the Acne Studios premises to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

144.     Because the result of Defendants' policy and practices is a place of public accommodation that is not accessible to people with disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

145.     Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations for the needs of persons with disabilities (including by failing to remove the architectural barriers to access detailed in Paragraph 60 herein) so that individuals with disabilities, including Plaintiff, have equal

opportunity to enjoy what Defendants offer at the Acne Studios premises, Defendants' place of public accommodation. N.Y.C. Admin. Code § 8-107(15)(a).

146.    Defendants have known, or should have known, that members of the public, which includes current and prospective patrons such as Plaintiff, have mobility disabilities.

147.    Defendants have known, or should have known, reasonable accommodations (including by failing to remove the architectural barriers to access detailed in Paragraph 60 herein) are required so that persons with mobility disabilities can have the equal opportunity to enjoy what Defendants offer at the Acne Studios premises.

148.    It would not cause undue hardship in the conduct of the Defendants' business to remove the architectural barriers to access detailed in Paragraph 60 herein as a reasonable accommodation for persons with disabilities.

149.    Defendant cannot demonstrate that it would cause undue hardship to the conduct of their respective businesses to remove the architectural barriers to access detailed in Paragraph 60 herein as a reasonable accommodation for persons with disabilities.

150.    Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of Defendants' failure to remove the barriers to access identified in Paragraph 60, and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

**Section 8-130: The City HRL's Construction and Maximally Protective Role.**

151.     To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

152.     The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85§ 7 and Local Law 35 § 2.

153.     The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

154.     The 2016 Amendments to the City Human Rights Law additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)]

25

shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

155.     Due to the above-referenced amendments, the New York City Human Rights Law provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and State HRL provide to persons in the same protected classes.

156.     Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law

157.     Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

158.     Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

159.     Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

160.     Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

161.     The City HRL's stricter standards also apply in situations where the ADA and the State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C. Admin. Code § 8-130.

162.    Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

163.    In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

164.    Each of the Defendants have aided and abetted others in committing disability discrimination.

165.    Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

166.    Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

167.    In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

168.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

169.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated,

27

egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

170.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

171.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to City HRL N.Y.C. Admin. Code § 8-502.

172.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies Defendants should have expended to provide an accessible space to themselves.

173.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.

174.    The amounts Defendants diverted to themselves, and the unlawful revenues they gained, plus interest must be disgorged.

175.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

176.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

177.    Defendants discriminated against Plaintiff in violation of the State HRL. N.Y. Exec. Law § 290 *et seq.*

178.    Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by N.Y. CRL §§ 40-c and 40-d for each and every violation.

179.    Notice of this action has been served upon the Attorney General as required by N.Y. CRL § 40-d.

## INJUNCTIVE RELIEF

180.    Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief Ordering Defendants to alter and modify their place of public accommodation to comply with the Accessibility Standards and the Human Rights Laws, is necessary.

181.    Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

182.    Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, State HRL, and the City HRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, the State HRL, and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.  Issue a permanent injunction ordering Defendants to close and cease all business until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, the State HRL and the City HRL, including but not limited to the violations set forth above;

C.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.  Award Plaintiff compensatory damages as a result of Defendants' violations of the State HRL and the City HRL;

E.  Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the City HRL;

F.  Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to N.Y. CRL §§ 40-c and 40-d;

G.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA, the State HRL, and City HRL; and

H.  For such other and further relief, at law or in equity, to which Plaintiff

may be justly entitled.

Dated: June 21, 2022
New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**

By:/s_____
Adam S. Hanski, Esq.
Attorneys for Plaintiff
40 Worth Street, 10th Floor
New York, New York 10013
Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ash@parkerhanski.com

31